# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| FREDERICK BURNEY, individually, | No. 61685-8-II |
| Appellant, | |
| v. | |
| SNOHOMISH COUNTY, a municipal corporation and political subdivision of the State of Washington; SNOHOMISH COUNTY 911, a Washington non-profit corporation; CITY OF LYNNWOOD, a municipal corporation, | PUBLISHED OPINION |
| Respondents, | |
| LAGUNA PROPERTIES, LTD. d/b/a QUALITY INN MARYSVILLE, a Washington for profit corporation; WILLIAM SANTOS, an individual; JEREMY MOORING, an individual; and JOHN DOES 1-20, | |
| Defendants. | |

CRUSER, J.—Frederick Burney filed suit against Snohomish County, the City of

Lynnwood, and Snohomish County 911 (collectively, the respondents), alleging negligence and

negligent infliction of emotional distress following an assault against him by Robert LeMasters.

Burney appeals the trial court's grant of summary judgment for Snohomish County 911 and both

Snohomish County's and the City of Lynnwood's motions for judgments on the pleadings. Burney

asserts that the trial court erred by concluding that the respondents did not owe either him or Robert

LeMasters a duty of care. He also argues that the trial court erred by refusing his request for a continuance regarding the summary judgment motion. The respondents counter that the trial court did not err, as they did not owe a duty to Burney or to Robert LeMasters.

We hold that the trial court did not err by granting the respondents' motions, as none of the respondents owed Burney a duty of care. Accordingly, we affirm.

FACTS

I. BACKGROUND

In February 2022, Frederick Burney was stabbed multiple times by Robert LeMasters,[1] who was experiencing a mental health crisis at the time. Burney filed suit against Snohomish County (the County), the City of Lynnwood (the City), Snohomish County 911 (Sno911), and others[2] for negligence and negligent infliction of emotional distress. The following details the relevant facts as described in Burney's complaint.

Burney alleges that the City had been informed that Robert needed mental health assistance multiple times before the stabbing. In January, Robert's former coworker called 911 to report "harassing and threatening phone calls and text messages" that Robert had sent to the coworker. Clerk's Papers (CP) at 13. A Lynnwood police officer responded to the call, interviewed Robert's former coworker, and "issued and filed a criminal citation against Robert" for cyberstalking. *Id.* Burney does not allege in his complaint that the officer had direct contact with Robert.

---

[1] We refer to Robert LeMasters as Robert because we reference his ex-wife Charla LeMasters as well.

[2] Only the three named respondents are parties in this appeal.

Three days before the incident with Burney, Lynnwood police responded to another call regarding harassing communications from Robert; this time, the communications were "sexual in nature," "graphic," and directed at Robert's stepdaughter and his ex-wife Charla LeMasters. *Id.* at 14. Charla asked the officer to conduct a welfare check on Robert because she was concerned that he was having a mental health crisis triggered by a failure to take his antipsychotic medication. An officer interviewed Charla and Robert's stepdaughter, then issued a criminal citation for harassment and cyberstalking with sexual motivation.

On the morning of the incident with Burney, Sno911 dispatch received a call from Charla, who stated that Robert was having a " 'mental health problem' " at a hotel in Marysville; Charla did not know which room Robert was in. *Id.* at 5. A deputy from the Snohomish County Sheriff's Office took the call. The deputy called Charla, but did not go to the hotel, request backup, or "contact 'specialized resources' such as the Snohomish County's Designated Crisis Responder or a local behavioral health clinician." *Id.* at 10.

That afternoon, Sno911 received a call from Robert in which he claimed he was being held hostage and requested assistance. Robert stated that the subjects were armed and forcing him to perform sexual acts, and that they were in the room across the hall from him. Robert told the dispatcher that one subject had threatened to rape him and that he was unable to leave his hotel room or else the subjects would see him. Sno911 coded the call as a "suspicious priority" and noted that Robert had a behavioral health condition. *Id.* at 7. The dispatcher made the following statements to Robert: " 'Do me a favor, hunker down where you are', 'My officers are going to want to call you to coordinate a rescue', and 'Okay we will do that' " (in response to Robert's request that deputies call his room using the front desk's phone). *Id.* at 620. A different Snohomish

3

County Sheriff's deputy than the one from the earlier call responded to Robert's call. The deputy called Charla, who told him that Robert was alone, was experiencing delusions while under the influence of methamphetamine, and had a "history of being aggressive with mental health workers," especially when in a psychotic state. *Id.* at 11. The deputy ended the call with Charla and informed the dispatcher that he would not take further action.

About four hours later, two Lynnwood police officers served Robert with the criminal citation and court notices for harassment and cyberstalking of Charla and Robert's stepdaughter. About an hour later, Robert knocked on Burney's hotel room door. When Burney opened the door, Robert "[began] to stab and attack . . . Burney with no provocation." *Id.* at 15. Burney sustained serious and permanent injuries.

## II. PROCEDURAL HISTORY

Burney alleged in his complaint that, based on the above facts, Sno911 had breached a duty to "notify, dispatch, direct, support and/or coordinate [a public safety/emergency response.]" *Id.* at 19. He asserted that the County breached a duty to "care for, coordinate, supervise, and/or provide specialized behavioral health resources for [an] emergency call involving a behavioral health incident." *Id.* at 20. Finally, Burney claimed that the City failed to "investigate, monitor, report and/or supervise and provide resources for emergency calls involving a behavioral health incident." *Id.* at 21. He also asserted that the City failed "to have and follow proper training, policies, and procedures when notified of a behavioral health crisis involving Robert" and "to follow proper training, policies, and procedures on the provision of reasonable and necessary medical and/or psychiatric services for Robert." *Id.*

4

After Burney filed suit, the County and the City each filed CR 12(c) motions to dismiss on the pleadings, and Sno911 filed a CR 56 motion for summary judgment. Each defendant claimed that Burney's suit could not continue because the respondents did not owe Burney a duty of care. In a single order, the trial court granted each respondents' motion. At the respondents' request, the trial court entered separate judgments for the County, the City, and Sno911.

Burney timely appeals the order granting final judgments to the County, the City, and Sno911.

## ANALYSIS

Burney argues that the trial court erred by granting summary judgment for Sno911, denying his request to continue the summary judgment motion, and by granting the County's and the City's motions for judgments on the pleadings. Burney asks this court to reverse the trial court and remand for further proceedings. The respondents argue that the trial court did not err because they did not owe Burney a duty of care, either directly or through a relationship with Robert.

We agree with the respondents and affirm.

### I. CR 56 MOTION FOR SUMMARY JUDGMENT

*A. Legal Principles*

Washington State waived immunity to civil suits against state and local government entities in the 1960s, but private citizens are limited in the suits they may bring against the government. *Norg v. City of Seattle*, 200 Wn.2d 749, 756-57, 522 P.3d 580 (2023). The public duty doctrine is a framework through which courts ensure that governmental entities are held liable only " 'to the same extent as if they were a private person or corporation.' " *Id.* at 758 (quoting RCW 4.96.010 and RCW 4.92.090). A plaintiff may only sue a government entity in tort if they can show that the

5

government breached a duty owed to an individual, not "a general obligation owed to the public." *Beltran-Serrano v. City of Tacoma*, 193 Wn.2d 537, 549, 442 P.3d 608 (2019). The public duty doctrine bars claims against public entities that are predicated on " 'special governmental obligations [that] are imposed by statute or ordinance.' " *Norg*, 200 Wn.2d at 758 (alteration in original) (quoting *Beltran-Serrano*, 193 Wn.2d at 549). If the alleged conduct is "analogous, in some degree at least, to the chargeable misconduct and liability of a private person or corporation," the suit is actionable and the court analyzes whether the government entity breached a common law duty to the plaintiff. *Id.* at 756-57 (internal quotation marks omitted) (quoting *Munich v. Skagit Emergency Commc'ns Ctr.*, 175 Wn.2d 871, 887, 288 P.3d 328 (2012) (Chambers, J., concurring)). To determine whether the public duty doctrine bars a claim, courts must "identify the duty that the [government entity] allegedly breached and determine whether that duty is based on a generally applicable statute or an individually applicable common law duty." *Id.* at 759.

The four exceptions to the public duty doctrine, under any of which the government "is held as a matter of law to owe a duty to the plaintiff," are: "(1) legislative intent, (2) failure to enforce, (3) the rescue doctrine, and (4) special relationship." *Munich v. Skagit Emergency Commc'n Ctr*, 175 Wn.2d 871, 879, 288 P.3d 328 (2012). The "legislative intent" exception applies to claims brought under a piece of legislation that is clearly intended to protect a specific class of persons. *Washburn v. City of Federal Way*, 178 Wn.2d 732, 754, 310 P.3d 1275 (2013). The "failure to enforce" exception applies when a government entity has "a mandatory duty to take a specific action to correct a known statutory violation." *Donohoe v. State*, 135 Wn. App. 824, 848-49, 142 P.3d 654 (2006). Under the rescue doctrine, a government entity is liable when it fails to exercise reasonable care after assuming "a duty to aid or warn a person in danger" and the victim

(or someone who would have otherwise aided the victim) detrimentally relies on the government's assumption of that duty. *Johnson v. State*, 164 Wn. App. 740, 750, 265 P.3d 199 (2011) (quoting *Chambers-Castanes v. King County*, 100 Wn.2d 275, 285 n.3, 669 P.2d 451 (1983)).

Finally, the special relationship exception to the public duty doctrine applies in one of two scenarios. In the first scenario, " '(1) there is direct contact or privity between the public official and the injured plaintiff which *sets the latter apart from the general public*, and (2) there are express assurances given by a public official, which (3) give[ ] rise to justifiable reliance on the part of the plaintiff.' " *Donohoe*, 135 Wn. App. at 835 (alterations in original) (internal quotation marks omitted) (quoting *Beal v. City of Seattle*, 134 Wn.2d 769, 785, 954 P.2d 237 (1998)). In the second scenario, a special relationship exists between the government and a third party " 'or the foreseeable victim of the third party's conduct' " if the government has a duty to control the third party's conduct. *Id.* at 836-37 (internal quotation marks omitted) (quoting *Caulfield v. Kitsap County*, 108 Wn. App. 242, 253, 29 P.3d 738 (2001)). "These relationships are typically custodial or supervisory in nature." *Id.* at 837.

We review an order granting summary judgment de novo. *Maslonka v. Pub. Util. Dist. No. 1 of Pend Oreille County*, 1 Wn.3d 815, 824, 533 P.3d 400 (2023). Summary judgment is proper if "there is no genuine issue as to any material fact and [ ] the moving party is entitled to a judgment as a matter of law." CR 56(c). "A genuine issue of material fact exists when reasonable minds could differ on the facts controlling the outcome of the legislation." *Dowler v. Clover Park Sch. Dist.*, 172 Wn.2d 471, 484, 258 P.3d 676 (2011). If no legally sufficient basis exists under which a factfinder could find for a party, the trial court must issue a judgment as a matter of law. *Id.* at 484-85; CR 50(a)(1).

*B. Analysis*

<u>i. Sno911's CR 56 Motion for Summary Judgment</u>

Burney raised the following causes of action against Sno911 in his complaint:

On February 18, 2022, Sno911 did not notify dispatch, direct, support and/or coordinate a public safety personnel response beyond contacting the Snohomish County Sheriff's Office when it received emergency 911 calls from Charla LeMasters [and] Robert LeMasters, . . .

[ ] On February 18, 2022, Sno911 did not notify, dispatch, direct, support and/or coordinate with specialized emergency response services and resources such as the Snohomish County Designated Crisis Responder or a behavioral health clinician when it received emergency 911 calls from Charla LeMasters [and] Robert LeMasters, . . .

CP at 19.

Burney does not argue that any of the public duty doctrine exceptions apply; in fact, he argues that the public duty doctrine framework is entirely inapplicable. Burney makes two assertions; first, that this court need not undertake an analysis under the public duty doctrine if the plaintiff pleads breach of an alleged common law duty, and second, that any time a governmental entity performs an essential function of its job, such answering a 911 call, it creates a particularized duty under the common law pursuant to the holding in *Norg*. However, Burney misinterprets *Norg*'s impact on the analysis that courts must undertake when faced with a tort claim against a government entity. We address his first contention and, concluding that we must undertake a public duty doctrine analysis, hold that the public duty doctrine bars Burney's claims against Sno911.

In *Norg*, the supreme court held that the public duty doctrine did not "apply" to the Norgs' claim against the City of Seattle; rather, the City of Seattle owed a common law duty of care to the Norgs when its medics were delayed in responding to the Norgs' 911 call because the responders first travelled to the wrong address. *Norg*, 200 Wn.2d at 753-54, 766. The supreme court used the

words "apply" and "bar" interchangeably to reference the fact that the public duty doctrine did not prevent the Norgs from suing the City of Seattle. *Id.* at 758-59. Although the supreme court stated that the public duty doctrine did not "apply" to the Norgs' claim, it did not state that a reviewing court is not required to complete a public duty doctrine analysis when examining whether the public entity owed an actionable duty of care to the plaintiff. In fact, the *Norg* court undertook that analysis when determining whether the public duty doctrine barred the Norgs' claims against the City of Seattle. The court concluded that the public duty doctrine did not bar the Norgs' claim because the City of Seattle owed a common law duty of care to the Norgs after establishing a particularized and direct relationship with the Norgs in its response to their request for emergency assistance. *Id.* at 766.

Therefore, we will first analyze whether the public duty doctrine bars Burney's claims.

The duties on which Burney relies in this complaint are imposed on Sno911 by Ordinance 17-101 of the Snohomish County Code. The ordinance states that "Snohomish County 911 has the responsibility and authority for . . . [n]otifying, dispatching, directing, supporting and coordinating public safety personnel response." SNOHOMISH COUNTY CODE 17-101(4)(a)(ii). In contrast to the Norgs' case, Burney alleges a breach of Sno911's ordinance-imposed duties that Sno911 owes to the public at large, not specifically to Burney. Unless he can prove that one of the exceptions to the public duty doctrine applies, his claim is barred by the public duty doctrine. Burney does not attempt to show an exception to the public duty doctrine because, again, he takes the position that the public duty doctrine does not apply to his case. Because Burney plainly relies on a claimed breach of Sno911's ordinance-imposed duties that are owed to the public at large, his suit fails as a matter of law. We therefore affirm the trial court's order granting summary judgment to Sno911.

ii. Burney's Request for Continuance

Next, Burney asserts that the trial court abused its discretion by denying his request for a continuance under CR 56(f). We disagree.

In his response to Sno911's motion for summary judgment, Burney requested a continuance of the motion to conduct further discovery. The trial court may continue a motion for summary judgment under CR 56(f) if "it appear[s] from the affidavits of a party opposing the motion that for reasons stated, the party cannot present by affidavit facts essential to justify the party's opposition." Through a declaration by one of his attorneys, Burney indicated that he wished to obtain evidence of Sno911's policies and procedures, depose a dispatcher, and obtain call audio that he believed existed because of materials obtained from the City. Additionally, Burney and Sno911 contest whether Sno911's responses to Burney's requests were timely and/or comprehensive.

A trial court may deny a party's request for a continuance under CR 56(f) if " 'the desired evidence will not raise a genuine issue of material fact.' " *Old City Hall LLC v. Pierce County AIDS Found.*, 181 Wn. App. 1, 15-16, 329 P.3d 83 (2014) (quoting *Turner v. Kohler*, 54 Wn. App. 688, 693, 775 P.2d 474 (1989)). Burney states that the information he requested concerned Sno911's failure "to exercise reasonable care in handling the LeMasters' request for emergency medical/mental health assistance as well as establishing the requisite personalized nature of the relation between Sno911 and the LeMasters[ ]." Br. of Appellant at 66-67. As Sno911's motion for summary judgment was based on a lack of duty, Burney was required to establish that the evidence he requested would raise a genuine issue as to whether Sno911 owed Burney an actionable duty of care.

Burney's argument that further discovery would elucidate Sno911's "failure . . . to exercise reasonable care" does not justify a continuance. *Id.* The failure to exercise reasonable care is an issue of breach, not duty.

Burney's assertion that additional information would "establish[ ] the requisite personalized nature of the relation between Sno911 and the LeMasters[ ]"[3] concerns duty, but Burney does not argue that further discovery would raise a genuine issue as to the existence of a special relationship between Robert and Sno911 *in the context of the public duty doctrine*. As previously stated, Burney argues that the public duty doctrine is entirely inapplicable; the extent to which Burney argues that a special relationship exists is in the context of a common law duty of care. But courts use different frameworks to determine whether a special relationship exists under the public duty doctrine or the common law duty of reasonable care.[4] Even if further discovery would raise a genuine issue as to whether the "special relationship" exception to the public duty doctrine applies, we cannot decide an issue on a basis not raised by the parties. RAP 12.1(a) ("[T]he appellate court will decide a case only on the basis of issues set forth by the parties in their briefs."). Therefore, we hold that the trial court did not abuse its discretion by denying Burney's request for a continuance under CR 56(f).

## II. CR 12(C) MOTIONS FOR JUDGMENTS ON THE PLEADINGS

*A. Legal Principles*

We review a trial court's dismissal under CR 12(c) de novo. *Davidson v. Glenny*, 14 Wn. App. 2d 370, 375, 470 P.3d 549 (2020). Dismissal is appropriate where the plaintiff undoubtedly

---

[3] Br. of Appellant at 66-67.

[4] *See* section II(A), *infra*.

fails to prove any set of facts justifying relief. *Id.* We assume the truth of all factual allegations within the complaint and "grant the plaintiff the benefit of all reasonable inferences from the factual allegations in the complaint, as well as hypothetical facts consistent with the complaint." *Zurich Servs. Corp. v. Gene Mace Constr., LLC*, 26 Wn. App. 2d 10, 20, 526 P.3d 46 (2023).

A public entity may owe a common law duty of reasonable care when it establishes a "particularized relationship" with another; this occurs when the public entity " 'voluntarily begins to assist an individual needing help' " or if it takes a negligent affirmative action (misfeasance) that causes harm to the plaintiff. *Norg*, 200 Wn.2d at 763, 766 (quoting *Folsom v. Burger King*, 135 Wn.2d 658, 674-75, 958 P.2d 301 (1998)); *Beltran-Serrano*, 193 Wn.2d at 550-51. Nonfeasance, or failure to act, cannot form the basis of a particularized relationship. *Beltran-Serrano*, 193 Wn.2d at 550-51.

When a plaintiff seeks to hold a public entity liable for harm caused to the plaintiff by a third party, however, the plaintiff must show that the public entity had a "special relationship" with either the plaintiff or the third party. *Robb v. City of Seattle*, 176 Wn.2d 427, 433, 295 P.3d 212 (2013). The plaintiff merely showing a "particularized relationship" between the public entity and the third party does not subject the public entity to liability to the plaintiff for harm caused by the third party. *Id.* ("As a general rule, 'in the absence of a special relationship between the parties, there is no duty to control the conduct of a third person so as to prevent him from causing harm to another.'") (internal quotations omitted) (quoting *Kim v. Budget Rent A Car Sys., Inc.*, 143 Wn.2d 190, 195, 15 P.3d 1283 (2001)). The "special relationship" arises in one of two scenarios. The first scenario is when the defendant and the third party have a "definite, established and continuing"[5]

---

[5] *Honcoop v. State*, 111 Wn.2d 182, 193, 759 P.2d 1188 (1988).

relationship that makes the defendant responsible for the third party's actions. This kind of relationship includes, for example, "a business and a business invitee, an innkeeper and a guest, the state and a probationer, and a psychotherapist and a patient." *Robb*, 176 Wn.2d at 433.

The second scenario in which a special relationship is created is if a defendant undertakes an affirmative act of misfeasance that endangers the plaintiff, the third party harms the plaintiff as a result of the defendant's affirmative creation of risk, and the resulting harm was foreseeable. *Id.* at 435 (citing *Parrilla v. King County*, 138 Wn. App. 427, 438-39, 157 P.3d 879 (2007), in which King County owed a duty of care to injured motorists where a bus driver exited his bus with the engine on while a "visibly erratic man" was alone on board, resulting in a crash). Only an affirmative act, not a failure to act, can create this kind of relationship. *Id.*

B. *Analysis*

Burney argues that the public duty doctrine does not apply to his claims against the County or the City and that the respondents violated the common law duty of reasonable care. However, the public duty doctrine does not become inapplicable simply because Burney wishes it to be so. To avoid dismissal of his suit pursuant to the public duty doctrine, Burney must establish that the County and the City owed the alleged duties specifically *to him*, not to the public at large. *Beltran-Serrano*, 193 Wn.2d at 549. In Burney's complaint, he asserts that the County and the City failed to coordinate behavioral health services for Robert. To the extent that the County and the City owe these duties at all, they are owed to the general public, not specifically to Burney. Because the duty identified by Burney is owed to the general public, and Burney has not argued that an exception to the public duty doctrine applies to his claims against the City and the County, the claims are barred.

Even if we assume that the public duty doctrine does not bar these claims, Burney nevertheless fails to demonstrate that the City or the County owed him an actionable common law duty because they neither created a particularized relationship with Burney, nor did they create a special relationship with Robert that would make them responsible for Robert's harm to Burney. An actionable common law duty arises when a public entity " 'voluntarily begins to assist' " the plaintiff or commits an act of misfeasance against the plaintiff. *Norg*, 200 Wn.2d at 763 (quoting *Folsom*, 135 Wn.2d at 674-75). We disagree that such a duty was created here because the respondents did not create a particularized relationship with Burney by voluntarily beginning to assist him or commit an act of misfeasance against him. The respondents also did not have a special relationship with Robert, as we explain below.[6]

i. Snohomish County

In his complaint, Burney alleges that a deputy with the Snohomish County Sheriff's Office was assigned by Sno911 to Charla's call for mental health assistance. The deputy called Charla and spoke with her. He did not request backup or mental health resources and did not go to the hotel where Robert was staying. That afternoon, Sno911 dispatched the call from Robert, coding it as a behavioral health call. A separate deputy was assigned to that call. The deputy called Charla, and after receiving information from Charla about the situation, ended the call and informed dispatch that he would take no further action.

Burney argues that the County breached its duty to Robert to "care for, coordinate, supervise, and/or provide specialized behavioral health resources for [an] emergency call

---

[6] The County and the City contend that Burney is asking us to consider, in our review of the CR 12(c) motions, facts that the trial court only considered for Sno911's summary judgment motion. They ask that we not consider those facts in our analysis. We have not done so.

involving a behavioral health incident." CP at 20. Burney claims that the County breached this duty "when it failed to follow policies and procedures when responding to [the incident]"; specifically, the officers "made no direct contact with Robert" and "did not notify, dispatch, direct, support and/or coordinate with specialized emergency response services and resources." *Id.* However, nonfeasance cannot form the basis of a particularized relationship that gives rise to a common law duty of reasonable care. *Beltran-Serrano*, 193 Wn.2d at 550-51.

Burney further argues that the County violated the duty of reasonable care to Robert and is liable to Burney because the harm Robert caused Burney was reasonably foreseeable. But as stated in *Robb*,[7] foreseeability of harm to a third party is insufficient to establish that the County owed a duty of care to Burney. Whether the harm to Burney was foreseeable or not is immaterial absent a duty owed to either Burney or Robert.

Burney asserts that, because the County had responded to the LeMasters' phone calls, it "undertook [a] response" that created a common law duty to Robert. Br. of Appellant at 44-47. Even if that were true, and the County created a "particularized relationship" with Robert by taking affirmative actions to assist Robert, as we explained above, it is not enough for Burney to show that the County created a particularized relationship with Robert. Burney must instead demonstrate that the County had a "special relationship" with either Burney or Robert and therefore owed a duty to Burney arising out of its response to Robert's crisis. Burney fails to make this showing. Because the County did not have a "definite, established and continuing"[8] relationship with either

---

[7] 176 Wn.2d at 435.

[8] *Honcoop*, 111 Wn.2d at 193.

Burney or Robert and did not take an affirmative act that endangered Burney, it did not owe a duty to Burney under the common law.

The pleadings do not support a finding that the County had a "definite, established, and continuing" relationship with Burney; he does not allege that he had any contact with an agent of the County leading up to the incident. And Burney asserted in his complaint that the sheriff's office did not have any contact with Robert, either.

Further, Snohomish County deputies did not create a duty to Burney by taking an affirmative act that "create[ed] or expos[ed]"[9] Burney to a perilous situation. In *Robb*, a shooting victim was not owed a duty by the City of Seattle for police nonfeasance. 176 Wn.2d at 430-31, 439. Officers stopped two men on suspicion of a burglary and noticed shotgun shells on the ground but did not take the shells or ask the men about them because they thought the shells were unrelated to the stop. *Id.* at 430. After questioning ceased and the parties left the area, one of the men returned, collected the shells, and then shot Robb. *Id.* The supreme court held that the City of Seattle, through the officers, did not owe a duty to protect Robb from the shooter because it had not undertaken an affirmative act of misfeasance that placed Robb in danger. *Id.* at 437-39.

Here, the County's deputies did not take an affirmative action that endangered Burney. They each called Charla to familiarize themselves with the situation and decided not to act. Their

---

[9] *Robb*, 176 Wn.2d at 435.

failure to take further action cannot form a basis for a duty of care owed to Robert.[10] Thus, we hold that the trial court did not err by granting the County's motion for a judgment on the pleadings.[11]

ii. City of Lynnwood

Burney alleges in his complaint that the City received multiple calls concerning Robert's behavioral health leading up to the incident. In January, they responded to a call about harassing communications from Robert. The officers interviewed the complainant, then issued and filed a criminal citation against Robert for cyberstalking. In February, Robert's stepdaughter and ex-wife reported harassing calls and texts from Robert. Charla asked the police to conduct a welfare check on Robert because these messages made Charla concerned about Robert's mental health. The next day, Lynnwood police issued a criminal citation for harassment and cyberstalking with sexual motivation. On the day of the incident, Lynnwood police officers served Robert with the February citations.

According to Burney, the City breached its duty to "investigate, monitor, report and/or supervise and provide resources for emergency calls involving a behavioral health incident." CP at 21. He also claimed that the City failed "to have and follow proper training, policies, and procedures when notified of a behavioral health crisis involving Robert" and "to follow proper

---

[10] Burney states in his reply brief that a claim of nonfeasance can form the basis of a duty, but the case he cites concerns an employer/landowner's duty of care to an employee/invitee—a factually inapposite scenario. *Phillips v. Kaiser Aluminum & Chem. Corp.*, 74 Wn. App. 741, 748-49, 875 P.2d 1228 (1994).

[11] Burney also asserts that the County breached a duty of care by failing to follow internal policies and procedures in its response to Robert's crisis, but Burney offers no argument and cites no authority stating such internal policies and procedures create a duty of care. RAP 10.3(a)(6); *DeHeer v. Seattle Post-Intelligencer*, 60 Wn.2d 122, 126, 373 P.2d 193 (1962) ("Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none.).

training, policies, and procedures on the provision of reasonable and necessary medical and/or psychiatric services for Robert." *Id.*

Similarly to the claims against the County, Burney fails to show that the City owed him a duty of reasonable care. Burney does not allege that he had any contact with LPD officers, and the only contact that Burney alleges between Robert and the officers is the service of his criminal citations. These facts do not establish a "particularized relationship" between Burney and the City, nor do they establish a "definite, established and continuing" relationship with either Burney or Robert that would make the City responsible for Robert's actions.

Finally, the LPD officers did not commit an act of misfeasance that would create a duty of care to Robert. Burney states that the City breached the common law duty of care by "[f]ailing to inform officers . . . of [Robert's] mental history." Br. of Appellant at 55. But this alleged misconduct is not an affirmative act, and Burney may not establish a special relationship between Robert and the City based on nonfeasance.

We therefore conclude that the trial court did not err by dismissing Burney's suit against the City under CR 12(c).

No. 61685-8-II

CONCLUSION

The trial court did not err by granting Sno911's motion for summary judgment and Snohomish County's and the City of Lynnwood's motions for judgments on the pleadings.[12] We affirm.

_Cruser, J._
CRUSER, J.

We concur:

_Veljacic, C.J._
VELJACIC, C.J.

_Lee, J._
LEE, J.

---

[12] Burney also argued that the trial court erred by determining undisputed facts and by stating in its order entering separate and final judgments for the respondents that the respondents' motions to dismiss involved "purely legal issues." Br. of Appellant at 7. However, Burney did not make any argument concerning these assignments of error. We therefore decline to address them. RAP 10.3(a)(6).

19